**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| HUNG-LIN WU, WU TRUST, <br><br> Plaintiffs, <br><br> vs. <br><br> STANLEY F. C. TSENG, et al., <br><br> Defendants. | **Civil Action No. 2:06cv346** |
| HUNG-LIN WU, WU TRUST, <br><br> Plaintiffs, <br><br> vs. <br><br> JUEI CHUAN TSENG, et al., <br><br> Defendants. | **Civil Action No. 2:06cv580** |

**OPINION & ORDER**

There are two motions pending in the above matter. The first, a Motion to Dismiss Counts IV, VI, VII, and VIII of Plaintiff Hung-Lin Wu and Wu Trust's ("Plaintiffs") Complaint, was filed by Defendant Stanley F.C. Tseng ("Defendant Tseng" or "Mr. Tseng") on September 20, 2006. Doc. 8. The second, a Motion for Default Judgment against Defendants Fort Worth Development, Inc. ("FWD") and Fort Worth Properties, Inc. ("FWP"), was filed by Plaintiffs as to Count II. Doc. 29.

The Court heard argument on this matter on January 19, 2007 and ruled from the bench.[1] Because He could not show that Plaintiffs' Amended Complaint failed to state a claim upon which relief could be granted, Defendant Tseng's Motion to Dismiss Counts IV, VI, and VII was **DENIED**.  Doc. 35.  Defendant Tseng's Motion to Dismiss as to Count VIII was voluntarily withdrawn by his counsel, and is therefore **DENIED**.  Id.  Plaintiffs' Motion for Default Judgment as to Count II was further **GRANTED**.  Id.  An Order granting the Motion for Default Judgment shall be submitted by the Plaintiff and will be filed separately.  Id.

## I. PROCEDURAL HISTORY[2]

Plaintiffs filed their Complaint against Defendants Stanley F.C. Tseng, FWD, FWP, Chiao Tung Bank Co., Ltd. ("CTB"), the Professional Foreclosure Corporation of Virginia ("Substitute Trustee"), and Juei Chuan Tseng, on June 21, 2006.  Doc. 1.  Plaintiffs filed an Amended Complaint as a matter of right on August 7, 2006.  Doc. 2.  Defendant CTB answered on August 31, 2006.  Doc. 5.  Defendant Substitute Trustee answered on September 8, 2006.  Doc. 6.

Defendants FWD and FWP filed their first Motion for Extension of Time to File Answer on September 18, 2006.  Doc. 7.  On September 20, 2006, Defendant Tseng filed a Motion for Extension of Time to File Answer.  Doc. 9.  Both Motions for Extension of Time to File were granted by this Court on September 21, 2006, and Defendants Tseng, FWD, and FWP were

---

[1]Subsequent to filing of the motions which were the subject of the January 19, 2006 hearing, but prior to the hearing itself, the above cases were consolidated and transferred to Judge Henry Coke Morgan, Jr.  Docs. 8/23.  As of the date of this Order, no pleadings have been filed in civil action number 2:06cv580.

[2]This procedural history does not reflect the complete procedural history as to Defendant, but only those proceedings relevant to the present motion.

given until September 30, 2006 to file their Answers. Doc. 10, 11.

Defendants Tseng (Doc. 14), FWD, and FWP (Doc. 15) filed a second Motion for Extension of Time to File Answer on September 29, 2006. On October 10, 2006, Plaintiffs filed an Objection to Defendant Tseng's Motion for Extension of Time. Doc. 19. The second Motion for Extension of Time by Defendants FWD and FWP was granted by this Court on October 12, 2006. Doc. 20. Defendant Tseng filed an Answer to the Amended Complaint on October 20, 2006, subject to defect as untimely. Doc. 21. However, on October 25, 2006, Defendant Tseng's Motion for Extension of Time was granted by Agreed Order. Doc. 22.

No Answer has been received from Defendants FWD and FWP. On December 4, 2006, Plaintiffs requested Entry of Default against FWD and FWP on Count II of the Amended Complaint. Plaintiffs filed a Motion for Default Judgment as to these two Defendants that same day. Doc. 29. No response has been filed with the Court.

On September 20, 2006, Defendant Tseng filed a Motion to Dismiss Counts IV, VI, VII, and VIII, together with a Memorandum in Support. Doc. 8. Plaintiffs filed their Memorandum in Opposition to the Motion to Dismiss on October 3, 2006. Doc. 18. No rebuttal motion was filed by Defendant Tseng and the time for so filing has expired; accordingly, this matter is ripe for decision by the Court.

This case was Ordered consolidated with case number 2:06cv580 on November 28, 2006. Doc. 23. In the same Order, this matter was reassigned to Judge Henry Coke Morgan, Jr. Id.

## II. FACTUAL BACKGROUND[3]

### A. The Real Property

This case involves a parcel of real property (the "Real Property") located within the City of Norfolk, Virginia. Doc. 2 at 4, Ex. A. Based upon a June 2006 sale, the fair market value of the Real Property is approximately $1.45 million.[4] Id. In September 2001, however, the fair market value of the Real Property was between $300,000 and $400,000. Id. Although a portion of the Real Property is zoned for multi-family residences and another portion contains a commercial car wash, the Real Property was and remains largely unimproved. Id.

### B. The Wu Plaintiffs as Creditors

Plaintiff Mr. Wu and Defendant Mr. Tseng were business associates involved in, inter alia, Winner Metals of Florida, LLC ("WMF"), a scrap metal business located in Tampa, Florida. Id. At one time, its books showed that WMF owed Mr. Tseng money. Id. By April 2000, WMF's financial statements showed that Mr. Tseng and/or his various shell companies (the "Shell Entities") owed WMF approximately $500,000 in "related party loans." Id.

By early 2001, these "related party loans" had increased to $1.8 million. Id. Included in this amount were the proceeds of a "working capital" loan which Mr. Tseng had caused WMF to borrow from CTB. Id. Although WMF was the purported borrower under this loan, WMF never received the loan proceeds, for "working capital" or otherwise. Id. at 5. Instead, Plaintiffs allege

---

[3]Because the role of this Court is to accept all well-pleaded allegations in the Plaintiff's Complaint as true for the limited purpose of Defendant's Motion to Dismiss, this factual background is derived solely from the facts alleged in Plaintiff's Amended Complaint. Doc. 2; see Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)

[4]Defendants stipulated at the hearing that though the Real Property had been sold in June 2006, the purchaser failed to tender the purchase price. Therefore, the sale has not yet closed.

that Mr. Tseng caused the loan proceeds to be transferred to his various Shell Entities.  Id.

In or around early 2001, as WMF's business declined and Mr. Wu was lending money to WMF to pay its bills, Mr. Wu demanded that Mr. Tseng repay the "related party loans" owed to WMF.  Id.  Accordingly, on June 18, 2001, Mr. Wu met with Mr. Tseng's accountant and made demand for WMF records that he believed would confirm loans owed to WMF by Mr. Tseng and his Shell Entities, and, more importantly, would reflect that Mr. Tseng had defrauded Wu Trust out of more than $2.0 million during the formation of WMF.  Id.  Mr. Tseng's accountant immediately informed Mr. Tseng of Mr. Wu's demand.  Id.  Mr. Tseng testified that as a result of this meeting, he "[felt] the lawsuit was coming" and that Mr. Wu was about to "take some extreme measure."  Id.

Plaintiff states that Mr. Tseng ignored Mr. Wu's demands for repayment of the "related party loans" owed to WMF and Mr. Wu's demands for documents relating to the purchase and transfer of WMF's assets.  Id.  Ultimately, Plaintiffs filed an action (the "Florida Litigation") with the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (the "Florida Court").  Id.  On May 12, 2005, the Florida Court entered a final judgment (the "Judgment") in favor of the Plaintiffs, and against, inter alia, Mr. Tseng and various of his Shell Entities, including FWP, a Defendant in this matter.  Id., Ex. B.  As noted in the Judgment, the Florida Court awarded damages in favor of Plaintiffs, and against Mr. Tseng and others, in the approximate amount of $11.279 million based upon, inter alia, fraud and alter ego.  Id.  The Judgment was docketed with the Clerk's Office of the Circuit Court for the City of Norfolk, Virginia on or about July 26, 2005.  Id. at 6.

### C. The Transfer of the Real Property

Prior to the June 18, 2001 meeting between Mr. Wu and Defendant Tseng, the Real Property was owned by an entity known as Rio Partnership ("Rio"), a Virginia general partnership. Id. By deed dated July 30, 2001 (the "July 30, 2001 Deed"), less than six (6) weeks after the June meeting, Mr. Tseng transferred the Real Property from Rio to himself. Id., Ex. C. The July 30, 2001 Deed recites that "Rio . . . was dissolved on November 8, 1991 and Stanley Tseng became trustee in dissolution of the partnership's remaining assets and this deed is given to convey the assets to the sole remaining partner of the partnership." Id.

Roughly thirty (30) days after taking title in his own name, Mr. Tseng again transferred the Real Property for no apparent consideration from himself to Defendant FWD. Id. This transfer is evidenced by a deed dated September 5, 2001 (the "September 5, 2001 Deed"). Id., Ex. D.

### D. The First Deed of Trust

On the same day that he transferred the Real Property to FWD, September 5, 2001, Defendant Tseng obtained a $1.2 million "working capital" loan (the "Loan") from CTB in the name of FWD. Id. The Loan was structured as a revolving line of credit and was secured by a first priority deed of trust (the "First Deed of Trust") against the Real Property. Id. The First Deed of Trust is recorded in the Clerk's Office of the Circuit Court for the City of Norfolk, Virginia (the "Clerk's Office"), as Instrument Number 01-22176. Id.

Just like the "working capital" loan Mr. Tseng obtained from CTB in the name of WMF, the Loan was an alleged sham transaction. Id. Although made in the name of FWD, the Loan allegedly was not made for FWD's benefit and never benefitted FWD. Id. at 7. From the time

the Loan was made to the date of the hearing on the instant Motions, FWD never had a bank account, never had any active operations, and had never been properly capitalized. Id. In addition, the Real Property securing the Loan was, at the time of the Loan, worth between $300,000 and $400,000. Id. As such, FWD never had the means or ability to repay the Loan—circumstances that were allegedly known to CTB at the time the Loan were made. Id.

FWD never received the proceeds of the Loan. Id. Instead, CTB advanced $400,000 of the available credit under the Loan to defendant FWP on September 13, 2001, by wire transfer directly traceable to CTB. Id. This amount corresponded with the value of the Real Property at that time. Id.

FWP's bank statement for September 2001 also reflects that $800,000 had previously been wired into its account on September 6, 2001, by an entity described as "Firstunion N.Y." Id. It is unclear how or whether this deposit is related to the Loan.[4] Id. Regardless of whether the Loan was fully funded, Plaintiffs allege that FWD never intended to repay the Loan, a fact which was also allegedly known to CTB at the time the Loan was made. Id.

---

[4]Although the amount of the deposit, when added to the $400,000 received from CTB, totals $1.2 million, nothing in the loan documents suggests that the Loan was what is typically referred to as a "participation" loan. Id. (stating that, with a typical participation loan, all of the loan proceeds are funded by the named lender, who sells a percentage of the loan to other financial institutions). The Loan was also within CTB's lending limits, meaning that participation by another financial institution was not necessary. Id. Finally, the loan documents require at least three (3) days notice prior to an advance being made on the Loan. Id. Because the loan documents are dated as of September 5, 2001 and the First Deed of Trust not recorded until September 6, 2001, it is unlikely that $800,000 of the Loan proceeds would be funded by a third-party outside the terms of the loan documents. Id.
   Plaintiffs initially argued that it is logical to assume that the $800,000 is related to the Loan. Id. This possibility was raised by counsel for the Plaintiffs at a hearing before the Circuit Court for the City of Norfolk, Virginia before discovery of the above facts. Id. Based upon the facts set forth above, however, Plaintiffs now argue that the $800,000 was either unrelated to the Loan, or represents funds transferred by or on behalf of Mr. Tseng or one of his Shell Entities to increase the amount of the lien and thus protect the Real Property from legitimate creditors. Id.

The Loan was renewed by CTB each year. Id. Although CTB's own internal policies placed stringent requirements upon approval of any renewal request, CTB allegedly disregarded these requirements and indeed overlooked existing defaults in the loan documents themselves in order to renew the Loan each year. Id.

### E. The Second Deed of Trust

In or about October 2003, CTB made a $450,000 loan (the "Second Loan") to a Tseng entity known as Leigh Hall Retirement Residence, LLC ("Leigh Hall"). Id. At that time, Leigh Hall was in dire financial straits and its primary lender, Wachovia Bank, N.A. ("Wachovia"), was demanding repayment of all its outstanding obligations. Id. As with Mr. Tseng's other loan transactions with CTB, the purpose of the Second Loan was ostensibly not to assist the actual borrower (Leigh Hall) in its operations. Id. Instead, Plaintiffs allege that the purpose of the Second Loan was to fund Mr. Tseng's attorney's fees and expenses in the Florida Litigation. Id. The Second Loan was initially secured by a second lien on Leigh Hall's real property, which violated CTB's internal loan procedures. Id. Mr. Tseng and his wife both guaranteed the Second Loan. Id.

In or about February 2005, Leigh Hall's real property was sold at auction to repay Wachovia Bank, N.A. ("Wachovia"), which served as Leigh Hall's primary lender. Id. Upon Plainffs' information and belief, CTB received no funds from the sale. Id. at 9. On June 21, 2005, after Plaintiffs had obtained their Judgment, CTB accepted a second deed of trust (the "Second Deed of Trust") against the Real Property owned by FWD to secure the Second Loan. Id. The Second Deed of Trust is dated July 29, 2005, and recorded in the Clerk's Office as Instrument Number 05-30509. Id.

FWD did not receive any of the proceeds of the Second Loan, and did not derive any benefit from the Second Loan. Id. Instead, this transaction is alleged to have been motivated solely by Mr. Tseng's desire to obtain additional funds for the Florida Litigation and to relieve he and his wife's liability as guarantors under the Second Loan. Id. CTB was allegedly, at all relevant times, aware of these facts. Id.

**F. Facts in Support of Plaintiffs' Claim that the Transfer for the Real Property and the First Deed of Trust were for an Improper Purpose**

As discussed above, the Real Property was transferred from Rio to Mr. Tseng in July, 2001, supposedly based upon Rio's dissolution in 1991. Id. at 6, Ex. C. Rio, however, was not dissolved as of 1991, but instead was transacting business at least through November 5, 2005. Id. at 9.

Pursuant to certain post-judgment discovery orders issued by the Florida Court, Defendant Tseng was required to compile and deliver to Mr. Wu financial statements, tax returns and a schedule of all "related party loans." Id. Mr. Tseng hired Richard Ayers, a certified public accountant, to accomplish this task. Id. In the course of his employment, Mr. Ayers compiled a detailed schedule of the related party loans between Mr. Tseng and his various entities (the "Related Party Loan Schedule") including debts due between Rio and other Tseng entities. Id. The Related Party Loan Schedule indicates that Rio received in excess of $242,000.00 in "loans" after supposedly being dissolved. Id. at 10. Rio also maintained an active bank account until at least September 2005, from which it appears to have been paying CTB some of the debt service on the Loan. Id., Ex. E.

Although the various deeds of record indicate that title to the Real Property was

transferred from Rio to Mr. Tseng to FWD, examination of the federal tax returns for Mr. Tseng and FWP shows otherwise.[5] Mr. Tseng's personal tax return for 2001 identifies him as the owner of the Real Property even though it was transferred to FWD (which is a "C-corporation" for tax purposes) during that year. Id. In addition, FWP's federal tax returns list it as the owner of the Real Property during the 2003 tax year, when it is shown as being transferred to FWD for no consideration. Id. The Related Party Loan Schedule prepared by Mr. Ayers likewise credits FWP, not FWD, with payments of interest to CTB under the Loan, and holds FWP, not FWD, liable in instances where other entities paid CTB interest due on the Loan. Id. The Related Party Loan Schedule does not show FWP owing any sums to FWD, let alone the proceeds of the Loan. Id.

      The series of transactions culminating in the Loan (once the proceeds were distributed to FWP) should have been treated as a taxable event for Mr. Tseng. Id. However, because of the convoluted nature of the transaction and Mr. Tseng's failure to properly report it for tax purposes, Mr. Tseng was allegedly able to evade a significant tax liability. Id. In addition to evading his tax liabilities, Plaintiffs allege that Mr. Tseng's various transfers were accomplished with the intent to hinder, defraud or delay his creditors, including Mr. Wu. Id. Plaintiffs assert that Mr. Tseng, by obtaining a Loan which could never be repaid except by a sale of the Real Property serving as collateral for the loan, insured that he retained equitable title to the Real Property while protecting it from Mr. Wu's eventual judgment lien. Id. at 11.

---

[5] FWD does not appear to have filed tax returns for the period of at least 2000 through 2003. Id.

### III. MOTION TO DISMISS

### A. Standard of Review

#### *1. Motion to Dismiss for Failure to State a Claim*

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A Rule 12(b)(6) motion should only be granted "if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." Edwards, 178 F.3d at 244; see Venkatraman v. REI Systems, Inc., 417 F.3d 418, 420 (4th Cir. 2005) ("In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff.") (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)).

In deciding the motion, the court may consider the facts alleged on the face of the complaint, as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1357 (1990)). The Court may also look to documents attached to the Complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

### *2. Voluntary Conveyances: Section 55-81 of the Virginia Code*

Section 55-81 of the Virginia Code provides that where a conveyance of property is not made in exchange for valuable consideration, that transfer is void as to creditors existing prior to the transfer. Va. Code Ann. § 55-81 (1950). Specifically, this section requires that

> [e]very gift, conveyance, assignment, transfer or charge which is not upon consideration deemed valuable in law, or which is upon consideration of marriage, by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made, but shall not, on that account merely, be void as to creditors whose debts shall have been contracted or as to purchasers who shall have purchased after it was made. Even though it is decreed to be void as to a prior creditor, because voluntary or upon consideration of marriage, it shall not, for that cause, be decreed to be void as to subsequent creditors or purchasers.

Id. "To avoid a transfer pursuant to this provision, the trustee must demonstrate that (1) a transfer was made, (2) the transfer was not supported by consideration deemed valuable in law, and (3) the transfer was done when the transferor was insolvent or the transfer rendered the transferor insolvent." In re Meyer, 244 F.3d 352, 353 (4th Cir. 2001). An antecedent debt is valuable consideration for a conveyance of land. C-T of Virginia v. Euroshoe Associates, 762 F.Supp. 675, 678 (W.D.Va.1991), aff'd, 953 F.2d 637 (4th Cir.1992).

### B. Analysis

Plaintiffs have alleged eight (8) Counts for relief in its Amended Complaint. Doc. 2. These include: (I) that FWD was the alter ego of FWP; (II) that FWD's corporate veil should be pierced to hold Defendant Tseng accountable to the same extent that FWD may be held accountable; (III) that the First Deed of Trust should be set aside as a fraudulent conveyance pursuant to § 55-80 of the Virginia Code; (IV) that the First Deed of Trust should be set aside as

a voluntary conveyance pursuant to § 55-81 of the Virginia Code; (V) that the Second Deed of Trust should be set aside as a fraudulent conveyance pursuant to § 55-80 of the Virginia Code; (VI) that the Second Deed of Trust should be set aside as a voluntary conveyance pursuant to § 55-81 of the Virginia Code; (VII) that CTB should be held liable for any proceeds it receives on the sale of the Real Property on account of the First and Second Deeds of Trust; and, (VIII) that the foreclosure sale conducted by the Substitute Trustee on June 26, 2006 is objectionable because the First and Second Deeds of Trust are void and/or voidable. Doc. 2.

Defendant Tseng has moved the Court to dismiss Counts IV, VI, VII, and VIII of Plaintiff's Complaint, for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Doc. 8. Defendant withdrew its Motion to Dismiss as to Count VIII at the hearing on January 19, 2007. Accordingly, the Motion to Dismiss as to Count VIII is **DENIED**. Doc. 35. The Court heard argument on dismissal of Counts IV, VI, and VII, and determined that Defendant did not meet its burden of showing that, if all alleged facts are presumed true, Plaintiff has not stated a claim upon which relief may be granted. Accordingly, Defendant's Motion to Dismiss Counts IV, VI, and VII is **DENIED**.

### *1. Counts IV, VI, and VII*

Defendant Tseng premises his arguments on Counts IV, VI, and VII on the same proposition: that the theories of veil-piercing and alter ego may be used defensively to protect a debtor from that claims of a creditor, just as these theories are traditionally used to allow a creditor to reach the assets of a debtor. Doc. 8 at 3. Defendant Tseng argues that, taking as true Plaintiffs' contention that FWD is the alter ego of FWD, then the requirement of valuable consideration under § 55-81 may also be met because FWP received funds from CTB in

exchange for the First Deed of Trust. Doc. 8 at 3 (discussing Grounds IV and VII). Defendant Tseng's argument follows that if FWP was the alter ego of FWD, then consideration exchanged between CTB and FWP, is consideration between CTB and FWD. Id. at 4. Similarly, Defendant Tseng argues that consideration exchanged between himself and CTB for the Second Deed of Trust is the same as consideration exchanged between CTB and FWD. Id. at 7 (discussing Grounds VI and VII). Defendant Tseng thus embraces the theories of liability asserted by Plaintiffs in Grounds I and II in an effort to avoid liability on grounds IV, VI, and VII. Defendant Tseng does not, however, validate his arguments with supporting law.

The alter ego doctrine is an equitable remedy available to creditors that cannot be used defensively by alleged debtors. 1 FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS, § 41.10; see Weaver v. Texas, 652 S.W.2d 420, 422 (Texas App. 1982) ("The alter ego doctrine is merely a means of piercing the corporate veil to hold individuals personally liable in certain actions, and is remedial in nature, not defensive."). "The alter ego doctrine states that, when the corporation is deemed an instrumentality or business conduit of another corporation or person, the corporate form may be disregarded. Under the doctrine, courts merely disregard the corporate entity and hold the individuals responsible for their acts knowingly and intentionally done in the name of the corporation." Id. § 41.10. The alter ego doctrine may be used to hold shareholders liable for the debts of their corporation (traditional veil piercing), to hold a corporation liable for the debts of a sole shareholder (reverse veil piercing), or to hold parent, subsidiary or affiliate corporations liable for the debts of another corporation. Id. § 43 (addressing parent, subsidiary and affiliate corporate liability under the alter ego doctrine). "An attempt to pierce the corporate veil is a means of imposing liability on an underlying cause of

action, such as tort or breach of contract." Id. § 41.10. "The alter ego doctrine is thus remedial, not defensive, in nature." Id., accord Pepper v. Dixie Splint Cole Co., 165 Va. 179, 190 (1935) (corporation which is an alter ego is to be treated as "one in the same in so far as the [creditor] is concerned.").

Although a finding of alter ego impresses the offending party with liability for the creditor's debt, it does not, as Defendant Tseng contends, merge two entities for all purposes. Rather, the remedy is applicable only to the extent necessary to pay the lawful debts of the creditor seeking redress. As noted by the Virginia Supreme Court in Pepper, "[s]uch complete dominance and control by them made the two corporations and the co-partnership, [as to] the [creditor], merely a veil or shadow through which the court will look to the substance of things whenever it would be unconscionable, through corporate fiction or otherwise, to permit the real and responsible parties to escape liability. . . ." Pepper, 165 Va. at 190.

Because the alter ego doctrine may not be used defensively by Defendant Tseng to avoid liability, the Motion to Dismiss Courts IV, VI, and VII is **DENIED**. The Court will not apply this equitable doctrine conversely to achieve a result opposite of its purpose.

*2. Count VIII*

Defendant Tseng contends that Count VIII, in which Plaintiffs object to the foreclosure sale and any accounting thereto because the two Deeds of Trust are allegedly void and/or voidable, should be dismissed upon principles of res judicata and collateral estoppel. Doc. 8 at 7-8. Counsel for Defendant Tseng withdrew the Motion to Dismiss as to Count VIII at the hearing. Doc. 35. Accordingly, the Motion to Dismiss as to Count VIII is **DENIED**.

### IV. MOTION FOR DEFAULT JUDGMENT

Plaintiffs have filed a Motion for Default Judgment against Defendants FWD and FWP as to Count II for their failure to answer Plaintiffs' Amended Complaint. Doc. 29. The Court heard argument on Plaintiffs' Motion for Default Judgment and the Motion was **GRANTED**. Counsel for Plaintiffs is **DIRECTED** to submit a proposed judgment order within eleven (11) days of this Order.

### V. CONCLUSION

For the reasons stated, Defendant Tseng's Motion to Dismiss Counts IV, VI, VII and VIII is **DENIED**.

Plaintiffs' Motion for Default Judgment against FWD and FWP is **GRANTED** as to Count II. A draft Order from the Plaintiffs to this effect shall be submitted.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record in the consolidated cases.

It is so **ORDERED**.

/s/
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
January 23, 2007