**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

HUNG-LIN WU,
et al.,

        Plaintiffs,

vs.                             **Civil Action No. 2:06cv346**

STANLEY F. C. TSENG,
et al.,

        Defendants.

**O**RDER AND **O**PINION

On November 13, 2007, the Court heard arguments on the following motions: (1) Plaintiffs Hung-Lin Wu and Wu Trust's ("Plaintiffs") Motion to Compel Mega International Commercial Bank Co., Ltd. ("the Bank") to Respond to Discovery (Doc. 128); (2) Plaintiffs' Motion for Continuance of the Bank's Motion for Summary Judgment under F<small>ED</small>. R. C<small>IV</small>. P. 56(f) ("Rule 56(f)") (Doc. 130); and (3) the Bank's Motion for Summary Judgment (Doc. 126). For the reasons stated herein, the Court **GRANTS** the Plaintiffs' Motion to Compel. As ordered at the hearing, the Bank must produce all answers to interrogatories and document requests that are specified in the Motion to Compel by November 20, 2007. In light of this forthcoming discovery, the Court also **GRANTS** the Plaintiffs' Motion for Continuance of the Bank's Motion for Summary Judgment. The Court will make a ruling on the Bank's Motion for Summary Judgment when the Bank has adequately responded to the Plaintiffs' discovery requests.

## I. FACTUAL BACKGROUND[1]

This case arises out of Plaintiffs' attempts to satisfy an $11 million judgment (the "Judgment") they achieved over Defendant Stanley F.C. Tseng ("Tseng") and several entities, including defendant Fort Worth Properties, Inc. ("FWP"), controlled by Tseng in Florida state court in May 2005 (the "Florida Litigation"). See Doc. 2. Defendant Fort Worth Development, Inc. ("FWD"), a separate entity from FWP, was not part of the Florida Litigation. Plaintiffs allege that Tseng engaged in fraudulent activity to avoid paying the Judgment by transferring assets among various entities that he controlled. Plaintiffs want to have Tseng's entities declared the alter ego of Tseng and each other so that Plaintiffs can pierce the corporate veil and reach the assets of the entities to satisfy the Judgment. This particular case involves entities FWD and FWP. Id. Count I of the complaint seeks to pierce the corporate veil to have FWD declared the alter ego of FWP so that the Judgment can be enforced against FWD. Id. Count II seeks to pierce the corporate veil to have FWD declared the alter ego of Tseng so that the Judgment can be enforced against FWD. Id.

The Bank claims the right to proceeds from a foreclosure sale on property (the "Llewellyn Property") formerly owned by FWD that was used as collateral for two (2) loans issued by the bank, one to FWD and one to a second Tseng entity. Id. The Bank also has a history of dealing with Tseng and his entities. In September 2001, the Bank entered into a revolving credit agreement (the "FW Loan") with FWD was secured by a deed of trust (the "First Deed of Trust") on the Llewellyn Property. Id. The Bank took a second deed of trust (the "Second Deed of Trust") on the Llewellyn property in October

---

[1] As both the factual background and procedural history of this case are extensive, only background relevant to the current motions is included here.

2004. Id. The Bank claims that the Second Deed of Trust was collateral for a separate loan made to another Tseng controlled entity, Leigh Hall Retirement Residence, LLC (the "Leigh Hall Loan"). This entity is not otherwise involved in this litigation. In March 2006, FWD defaulted on the FW Loan. Id. The Bank instituted foreclosure proceedings in June 2006 (the "foreclosure sale"). Id. The foreclosure sale occurred but has not closed because of this litigation. Id.

In Counts III through VI, Plaintiffs seek to void the two (2) Deeds of Trust securing the Llewellyn Property as collateral as fraudulent and/or voluntary conveyances under Virginia law. Id. Plaintiffs argue that if these Deeds of Trust are set aside, then the Llewellyn Property still belongs to FWD, and is thus reachable by them as creditors if FWD is declared the alter ego of either Tseng or FWP. Id. Counts VII and VIII seek to claim the proceeds from the foreclosure sale for Plaintiffs. Id. Plaintiffs' specific allegation against the Bank is that it had knowledge of Tseng's fraudulent activity and thus was a party to the fraudulent conveyances. Id. Plaintiffs also contend that the Bank gave inadequate consideration for the Deeds of Trust, so that these transactions were also voluntary conveyances. Id. The Bank claims that Plaintiffs have no evidence showing it had knowledge of Tseng's fraudulent activity and that all transactions with Tseng were legitimate. Doc. 126.

## II. PROCEDURAL HISTORY

In June 2006, Plaintiffs filed the present lawsuit and an additional suit in Norfolk Circuit Court attempting to enjoin the foreclosure sale. See Doc. 1 (Complaint). Plaintiff also filed a lis pendens on the Llewellyn Property in Norfolk Circuit Court in 2005. Doc. 127 (Mem. in Supp. of Mot. for Sum. Judgment). The Norfolk Circuit Court dismissed

the action and released the lis pendens in June 2006. Id. In August 2006 Plaintiffs filed an amended complaint, alleging several claims in an attempt to realize the proceeds from the foreclosure sale. Doc. 2. The Defendants named in the federal complaint were Tseng, FWD, FWP, the Bank, and the Professional Foreclosure Corporation of Virginia, who completed the foreclosure sale. Id. Default judgment was entered against both FWD and FWP on Count II on February 5, 2007. Doc. 37 (order granting default judgment).

In June 2007 Plaintiffs filed an involuntary bankruptcy petition against FWD. See Doc. 80 (Suggestion of Bankruptcy). All parties stopped discovery at this time because all parties assumed that FWD's bankruptcy proceeding stayed the entire litigation. Doc. 131 at 2 (Mem. in Supp. of Mot. for Cont.). Plaintiffs thus halted discovery until the Court entered an order staying litigation against only FWD in September. See Doc. 105 (Order staying litigation). Plaintiffs' time for discovery expired on September 18, 2007. Id. at 3. On October 4, 2007, the Bank responded to Plaintiffs' discovery requests. Id. at 3. Plaintiffs allege that the Bank produced "entirely deficient" responses to discovery. Id. On October 18, 2007, the Bank filed the present Motion for Summary Judgment and Memorandum in Support. Docs. 126 and 127. On October 19, 2007, Plaintiffs filed the present Motion to Compel and Memorandum in Support. Docs. 128 and 129. On October 29, Plaintiffs filed the present Motion to Continue the Motion for Summary Judgment and Memorandum in Support. Docs. 130 and 131. On October 30, the Plaintiffs filed their Memorandum in Opposition to the Motion for Summary Judgment. Doc. 132. Also on October 30, the Bank filed its Memorandum in Opposition to the Motion to Compel. Doc. 133. On November 2, 2007,

Plaintiffs filed their Reply to the Response to their Motion to Compel. Doc. 134. On November 5, 2007, the Bank filed its Reply to the Plaintiffs' Opposition to its Motion for Summary Judgment. Doc. 135. On November 13, 2007, the Bank filed its Memorandum in Opposition to the Plaintiffs Motion to Continue the Motion for Summary Judgment. Doc. 138.

### III. MOTION TO COMPEL

#### A. Legal Standard

In discovery, parties are entitled to information and documents

> regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable material. . . . Relevant information need not be admissible at trial if it appears reasonably calculated to lead to the discovery of admissible evidence.

FED. R. CIV. P. 26(b)(1). The Court may order a party to respond to discovery on any relevant matter "for good cause." Id. The Court has great discretion in granting a motion to compel. See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995). Even where a motion to compel is untimely, the Court can still consider the motion "if the movant offers an acceptable explanation for the motion's tardiness." See Spencer Med. Assocs. v. Comm'r, 155 F.3d 268, 273 (4th Cir. 1998).

#### B. Analysis

Plaintiffs argue that the "Bank's [discovery] responses are, for a variety of reasons, entirely deficient." Doc. 129 at 1. The Bank responds that the Motion to Compel is untimely because it was filed after Plaintiffs' time for discovery expired on September 18, 2007. However, Plaintiffs had good cause for delaying discovery due to the FWD bankruptcy case. The Bank agrees that all parties stopped litigation under the

assumption that the entire case was stayed. Doc. 129 at 3. When the Court entered an order staying the proceedings only as to FWD, discovery resumed. Id. The Bank submitted their discovery responses on October 4, 2007, a date roughly two (2) weeks after discovery officially ended for the Plaintiffs. See id. Plaintiffs were thus unable to tell whether the discovery was adequate until recently. Id. Therefore, the Court **FINDS** that this Motion is timely, and will proceed to analyzing each of the Plaintiffs' arguments regarding discovery.

Plaintiffs' first argument is that the Bank failed to disclose any information or documents regarding its past dealings with Tseng. Although the Bank admits that it began a banking relationship with Tseng in 1995, it has failed to answer any questions about the specifics of that relationship. Doc. 129 at 9. The Bank admits that it has not produced information regarding its prior business dealings with Tseng, but the Bank "stands by" its objections, stating that "those interrogatories seek information about unrelated loans and assume, inaccurately, facts not in evidence. . . . Prior loans between Tseng and/or his entities have no bearing on the two loans at issue." Doc. 133 at 4.

These materials are clearly within the scope of discovery and should have been produced. The test for whether material is within the scope of discovery is very broad. There is no question that in this case, the course of dealings between the Bank and Tseng is discoverable. Although this information may turn out to be irrelevant for the purposes of trial, that does not excuse the Bank from failing to produce these materials now. The Bank must outline each and every one of Tseng's prior transactions with the Bank and produce any documentation on these transactions.

Plaintiffs' second argument is that the Bank's responses to discovery on the loans

at issue were deficient. Plaintiffs claim that the Bank has refused to answer questions as to why it deviated from its lending policies in issuing the FW and Leigh Hall Loans. Id. at 5-8. The Bank has not produced its most recent policy and procedure manual and has refused to stipulate to the admissibility of an older, incomplete version that was produced as part of the Florida Litigation. Doc. 141 (Transcript of Nov. 13 hearing). Plaintiffs also claim that the Bank has not produced the notices of intent to draw down on the loans, documents Plaintiffs claim are relevant. Id. The Bank states that it has produced all materials related to the FW and Leigh Hall Loans. Doc. 133 at 3. Additionally, the Bank claims that Plaintiffs already have access to much of this information because it was produced during the Florida Litigation. Id.

Any specifically requested information or documentation that has yet to be produced on the loans at issue is clearly within the scope of discovery. The Court has not seen what was produced for the Florida Litigation; thus, the Court cannot say whether the information that was produced is complete. The Bank must produce all documents related to these loans that have not yet been produced. The Bank must also give more specific answers to interrogatories. Additionally, the Bank must produce the rules governing its internal lending policies, unless the parties can stipulate to the earlier produced version.

Plaintiffs' final contention is that they have been unable to depose two (2) individuals with information on the loans at issue. See Doc. 130. The first individual is Mark Pan, former outside counsel for the Bank. Id. Mr. Pan was listed by the Bank as an individual with knowledge of the facts at issue. Id. He has been issued a valid subpoena for a de bene esse deposition. Id. Mr. Pan has apparently "left the country," so Plaintiffs

have been unable to complete this deposition.  Id. The Southern District of New York recently denied the Bank's Motion to Quash this subpoena.  See Doc. 141.  Plaintiffs also seek to depose Peter Peng.  Id.  Mr. Peng was the loan officer in charge of the FW and Leigh Hall Loans.  Id.  Mr. Peng is "no longer with the bank" according to the Bank's discovery responses.  See id.  However, a bank employee testified at his deposition that Mr. Peng is still employed by the Bank and was recently relocated to Taiwan.  Doc. 131, Ex. B at 25-27, 52.

The Bank states that Plaintiffs have not taken action to depose these witnesses.  See Doc. 141.  As to Mr. Pan, the Bank states that after the Motion to Quash was denied, the Bank made Mr. Pan available for deposition on a date in early November.  Id.  The Plaintiffs turned down the date.  Id.  As to Mr. Peng, the Bank states that their counsel made a mistake as his status.  Id.  The Bank misunderstood the client, and believed that Mr. Peng was no longer with the Bank when the client was actually stating that he was no longer with the New York office.  Id.  The Bank states that they will be happy to make Mr. Peng available for a deposition, but Plaintiffs have not requested such an action.  Id.

The Court is not impressed with the Bank's arguments.  Plaintiffs must be given the opportunity to review the missing documents to determine whether or not these depositions are necessary.   Plaintiffs have stated that Mr. Peng's deposition is of the most importance to them.  Thus, Defendants must make Mr. Peng available for deposition on Wednesday, November 21, 2007.  Plaintiffs must be given the outstanding document requests by November 20, 2007 so that they can determine how to proceed.  Plaintiffs may then determine whether they would like to also to depose Mr. Pan.

## IV. MOTION FOR RULE 56(f) CONTINUANCE

### A. Legal Standard

Rule 56(f) provides that if a party opposing summary judgment

> cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f). As a general matter, "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (bracketed text in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 n.5 (1986)). A Rule 56(f) affidavit must describe "(1) the information sought and how it is to be obtained; (2) how a genuine issue of material fact will be raised by that information; (3) what efforts the affiant has made to obtain the information; and (4) why those efforts were unsuccessful." United States v. Smithfield Foods, Inc., 969 F. Supp. 975, 978 (E.D. Va. 1997) (quoting Sage Realty Corp. v. Ins. Co. of N. America, 34 F.3d 124, 128 (2d Cir.1994)).

A motion under Rule 56(f) must be both timely and identify specific sources of relevant information to provide a basis for belief that the information the party seeks actually exists. Gen. Trucking Corp. v. Westmoreland Coal Co., 979 F.2d 847 (4th Cir. 1992). "The mere hope that something might turn up in further discovery does not satisfy the standards of Rule 56(f)." Goodell v. Rehrig Int'l, Inc., 683 F. Supp. 1051, 1054 (E.D. Va. 1988). Denying a Rule 56(f) motion is disfavored where the information sought is from outstanding discovery requests and is in the exclusive possession and control of the other party. Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191 (4th Cir. 2006).

**B. Analysis**

Plaintiffs argue that a Rule 56(f) continuance is warranted because the Bank has not responded to the discovery requests that are the subject of their motion to compel. Doc. 130. Plaintiffs contend that without such information "Plaintiffs are unable to respond to Mega Bank's Summary Judgment Motion fully and fairly." Id. at 2. Plaintiffs submit several lengthy exhibits that they claim show that documents responsive to their discovery requests "exist and have been withheld by Mega Bank." Id. The Bank states that Plaintiffs fail to meet the affidavit requirement of Rule 56(f). Doc. 138. The Bank also repeats its arguments regarding the outstanding discovery requests, which are resolved above. Id.

Plaintiffs have satisfied the affidavit requirement of Rule 56(f). Plaintiffs submit an affidavit from their counsel, John McIntyre, to support this Motion. Doc. 131, Ex. C. McIntyre states that the materials sought indicate that the Bank knew that the FW and Leigh Hall Loans were not valid transactions. Id. at 2. McIntyre states that these materials were sought through discovery but the Bank has failed to adequately respond. Id. Thus, McIntyre shows that Plaintiffs have made a valid, unsuccessful effort to obtain the information. Id. McIntyre additionally states that a genuine issue of material fact will be raised because this information will indicate that the Bank knew of Tseng's fraudulent intent. Id. at 3. Plaintiffs hope to obtain this information by the Court granting their Motion to Compel. Id. at 4

Plaintiffs have also demonstrated that they seek specific, relevant, existing information and documents that will provide a basis for the denial of summary judgment. Plaintiffs identified several specific document requests and interrogatory responses that

were deficient. See Docs. 129 and 131. The materials sought are the subject of these discovery requests. The Bank has access to this information. The outstanding discovery requests are also relevant to Plaintiffs' claims. As Plaintiffs have thus satisfied the requirements, their Motion for a Rule 56(f) Continuance is **GRANTED**.

### V. CONCLUSION

For the reasons outlined above, the Court **GRANTS** the Plaintiffs' Motion to Compel and **ORDERS** the Bank to respond to all requests detailed by Plaintiffs by November 20, 2007. Additionally, the Court **GRANTS** the Plaintiffs' Motion for Continuance of the Bank's Motion for Summary Judgment. The Court will withhold a ruling on the Bank's Motion for Summary Judgment until the specified materials are produced.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record. It is so **ORDERED.**

/s/
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 19, 2007